

# PAVAN PARIKH
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

### ELECTRONICALLY FILED
### December 29, 2022 10:39 AM
### PAVAN PARIKH
### Clerk of Courts
### Hamilton County, Ohio
### CONFIRMATION 1267585

**TUNISHA CUNNINGHAM**
   vs.
**PEOPLEREADY INC**

A 2204735

**FILING TYPE: INITIAL FILING (IN COUNTY) WITH JURY DEMAND**

**PAGES FILED: 31**

EFR200

## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| TUNISHA CUNNINGHAM | ) | CASE NO. |
| 282 Jupiter Dr. | ) | |
| Cincinnati, OH 45238 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| PEOPLEREADY, INC. | ) | |
| 1343 E Kemper Road | ) | **JURY DEMAND ENDORSED** |
| Cincinnati, OH 45246 | ) | **HEREIN** |
| | ) | |
| **Serve Also:** | ) | |
| People Ready, Inc. | ) | |
| c/o Corp. Service, Co. (Stat. Agent) | ) | |
| 50 West Broad Street, Suite 1330 | ) | |
| Columbus, OH 43215 | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, Tunisha Cunningham, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

### PARTIES

1. Cunningham is a resident of the city of Cincinnati, Hamilton County, Ohio.

2. Defendant PEOPLEREADY, INC. ("PeopleReady") is a foreign incorporated company that conducts business within the state of Ohio.

3. The relevant location of the events and omissions of this Complaint took place was 1343 E Kemper Road, Cincinnati, OH 45246.

4. PeopleReady is, and was at all times hereinafter mentioned, Cunningham's employer within the meaning of The Americans with Disability Act ("ADA") 42 U.S.C. § 12101, Title VII of the Civil

Rights Act of 1964 ("Title VII") 42 U.S.C §2000e, Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2617 et seq., and R.C. § 4112 et seq.

5. Within 300 days of the adverse employment actions described herein, Cunningham filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2022-00866 ("EEOC Charge").

6. On or about October 5, 2022, the EEOC issued and mailed a Notice of Right to Sue letter to Cunningham regarding the EEOC Charge.

7. Cunningham received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which had been attached hereto as Plaintiff's Exhibit 1.

8. Cunningham has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

9. Cunningham has properly exhausted all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

## JURISDICTION & VENUE

10. All of the material events alleged in this Complaint occurred in or around Hamilton County, Ohio.

11. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1) and/or (3).

12. Venue is proper pursuant to Civ. R. 3(C)(1), (3), and/or (6).

13. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

14. Cunningham is a former employee of PeopleReady.

15. At all times noted herein, Cunningham was qualified for her position(s) at PeopleReady.

16. At all times noted herein, Cunningham could fully perform the essential functions of her job(s), with or without a reasonable accommodation.

17. Cunningham worked for PeopleReady from November 6, 2017 until PeopleReady unlawfully terminated her employment on or about February 8, 2022.

18. At the time of her termination, Cunningham held the position of Assistant Branch Manager at PeopleReady.

19. Cunningham was a good employee with no significant disciplinary record and a history of good performance.

20. Cunningham is an African American woman and is therefore a member of protected classes based on her race and sex/gender.

21. Additionally, Cunningham deals with pain from an injury to her back, hip, leg, and foot that resulted from two separate car accidents, and takes care of her sick mother; therefore, Cunningham is in a protected class for her disabilities and the disabilities of her associate.

22. The start of Cunningham's employment was overwhelmingly positive.

23. However, things suddenly took a turn for the worse after Cunningham got into a motor vehicle accident while at work in or around May 2019.

24. The crash sent Cunningham to the hospital for pain in her chest, her right leg, her back, and her neck.

25. When Cunningham returned from to work, everyone mostly ignored her.

26. Further, Marketing Manager Nagle Lind and Vice President Kurt Marzolf joked behind Cunningham's back saying that the crash was likely the result of marijuana, which was false.

3

27. In the days following her accident, Cunningham tried to file a Workers' Compensation claim related to the motor vehicle accident.

28. However, Lind attempted to block Cunningham's claim by saying that Cunningham was already back to work.

29. Additionally, Lind started harassing Cunningham by dangling promotions and praises in front of her face but never following through or withdrawing the offer.

30. Cunningham was forced to retain a Workers' Compensation attorney to help progress the claim.

31. PeopleReady then approached Cunningham and tried to get her to lie about the motor vehicle accident.

32. Cunningham flatly refused.

33. The tension between Lind and Cunningham continued throughout the rest of Cunningham's employment.

34. Lind gave Cunningham the impression that he spent all his time just looking for things to write Cunningham up for.

35. Cunningham reported Lind's behavior to Regional Manager (name unknown, female, Caucasian) and Human Resource Representative Sonya Sabal in late summer 2019.

36. During the report, the Regional Manager seemed to be covering for Lind, but assured Cunningham that Lind would be reprimanded.

37. To the best of Cunningham's knowledge and belief, Lind was never reprimanded.

38. In or around September 2019, Manager Ricardo Tostado (male) was hired.

39. Cunningham helped to train Tostado.

40. When a new manager position opened up, Cunningham applied and was told by Lind that the position was basically promised to her.

41. However, Cunningham was passed over and the job went to Tostado.

42. As time went on, Tostado's treatment towards Cunningham worsened.

43. Unlike her coworkers, Cunningham was not permitted to come and go as she pleased without facing discipline.

44. Tostado would prevent Cunningham from taking time off work, would constantly nit-pick her work, and would downplay Cunningham's efforts and work product.

45. In or around early 2020, Cunningham found herself picking up a lot of Tostado's slack.

46. Throughout this time, Lind and Tostado continued to gang up on Cunningham and treat her poorly in the workplace.

47. In or around early 2021, Staffing Specialist Leonette Griffin and Cunningham had a meeting with Lind to express their concerns about the office being short-staffed.

48. Lind mostly ignored Cunningham and Griffin but offered to send Andrew Crane from Accounting down to help relieve some of the stress.

49. Despite Lind's promise, Crane rarely came down to help Griffin and Cunningham, and the few times he did come down, he was not even marginally helpful.

50. In or around the middle of 2021, Cunningham and Griffin had a meeting with Tostado to complain about being overworked and understaffed, which was exacerbating her mental health. This was a protected complaint.

51. At this meeting, Cunningham told Tostado that her mother was struggling with a disability.

52. This constituted notice onto PeopleReady of Cunningham's disability protected class by association.

53. Cunningham explained that she needed to be with her family more often because of her mother's condition, but Tostado was not helpful.

5

54. In or around late 2021, Market Manager Tami Fischer started working at PeopleReady.

55. It was clear from the beginning that no one at PeopleReady liked Fischer.

56. Multiple times during her employment, Tostado called Fischer a bitch, a bully, and ugly behind her back – sexist comments against her.

57. Cunningham's first professional experience with Fischer was when Fischer accused her of being rude to the new Branch Manager, Dane Pritchert.

58. Pritchert got offended when Cunningham called him "new," and reported her to Fischer.

59. When Cunningham tried to give more context to the situation, Fischer refused to listen to her.

60. When Cunningham tried to push back, Fischer claimed that Cunningham was talking to her with a tone.

61. Cunningham pushed back again, saying that she wasn't talking with a tone, and was just trying to do her job.

62. Fischer told Cunningham that she was taking her comments out of context, and that "us females sound worse than we [intend to]."

63. What was supposed to be a civil conversation to clear up some miscommunication, turned into a passive-aggressive back and forth with racist and sexist undertones.

64. Soon after this incident with Fischer, Pritchert made an inappropriate comment to Tostado at work about Cunningham.

65. When Cunningham asked what was said, Tostado told her that Pritchert called Cunningham and Griffin his "maids," and that they should be "serving [him] drinks."

66. Cunningham reported this comment to Fischer, another protected complaint, but was ignored.

67. Throughout this time, Tostado continued to nit-pick Cunningham's work.

E-FILED 12/29/2022 10:39 AM / CONFIRMATION 1267585 / A 2204735 / COMMON PLEAS DIVISION / IFIJ

68. When Cunningham asked that Tostado respect her professional boundaries, he became angry with her.

69. Once, Tostado even accused Cunningham of being insubordinate.

70. Cunningham was not insubordinate.

71. On or around October 20, 2021, and November 25, 2021, Cunningham had two more motor vehicle accidents.

72. These accidents were outside of work and exacerbated Cunningham's previous injuries.

73. Cunningham asked for some time off to recover from the accidents, thus giving additional notice of her disability, but Tostado tried to get her to return to work.

74. Cunningham even turned in doctors' notes, but Tostado tried to downplay and gaslight her pain.

75. Cunningham was able to get Family and Medical Leave Act ("FMLA") leave during this time to recover.

76. Tostado forced Cunningham to send her FMLA paperwork into him as well as the FMLA administrative group at PeopleReady.

77. Janet (LNU) from the FMLA administrative group told Cunningham that she did not have to send her paperwork into Tostado.

78. Further, Janet (LNU) had a meeting with Tostado and told him to mind his own business.

79. Moving forward, whenever Cunningham tried to use FMLA leave she received harassment and retaliation from Lind and Tostado.

80. In the beginning of 2022, Tostado asked Cunningham to lend her work laptop to other PeopleReady employees.

81. Cunningham refused to do so, saying that it was against PeopleReady policy.

82. Tostado reported Cunningham to Fischer for failing to follow his instructions.

E-FILED 12/29/2022 10:39 AM  /  CONFIRMATION 1267585  /  A 2204735  /  COMMON PLEAS DIVISION  /  IFIJ

83. Fischer told Cunningham to turn in the laptop, and Cunningham again refused citing policy.

84. On or around January 21, 2022, Tostado tried again to loan out her laptop.

85. Cunningham again refused, referencing the previous conversation.

86. Tostado told Cunningham to either give him her laptop or go home for good.

87. Cunningham said, "Fine, then I'll go home."

88. On her way out, Cunningham told Fischer that Tostado was sending her home because she refused to give him her laptop.

89. Fischer agreed with Tostado and told Cunningham to go get her laptop.

90. Cunningham told Fischer that she believed she was being retaliated against for her previous issues.

91. In or around January 24, 2022, Cunningham came to work and was met by Tostado with the folders of new staffing specialists.

92. Cunningham asked Tostado if Fischer wanted the applications done before they left.

93. Tostado suddenly became very angry, snatched the folder away from Cunningham and stormed off.

94. Cunningham asked Tostado if something was wrong, and Tostado said, "You said no, don't worry."

95. Cunningham pushed back on this, but Tostado ignored her.

96. Cunningham returned to her desk and texted a coworker about work.

97. Seeing Cunningham on her phone, Tostado yelled at Cunningham to get off her phone.

98. Cunningham said that she was clearly doing work, but Tostado accused her of taking personal calls during work.

99. Cunningham said that she was contacting PeopleReady employees, not taking personal calls.

8

100. Later that afternoon, Cunningham saw Tostado take a personal call.

101. Halfway through the day, Cunningham began feeling ill and told Fischer that she needed to go home.

102. On or around January 25, 2022, Cunningham texted Fischer and Tostado and said she would not be coming in for work that day and requested to use her FMLA.

103. Fischer responded saying that she was sorry Cunningham was feeling ill, but suddenly asked why Cunningham had returned to work after hours the night before.

104. Confused, Cunningham said she never returned to work after leaving the previous day.

105. Fischer continued to try accusing Cunningham of returning to work the night before.

106. Cunningham told Fischer that she thought this conversation was off topic, harassing, and an outright false accusation.

107. On or around February 2, 2022, Cunningham was called into a meeting with Tostado.

108. At this meeting, Tostado told Cunningham that she was not doing her job and was not "approachable."

109. However, in the same breath, Tostado told Cunningham that she was good at her job.

110. This confusing meeting ended with Cunningham just wanting to get back to work and avoid further drama.

111. Unfortunately, the conditions of Cunningham's employment continued to worsen until she was forced to resign on or around February 8, 2022.

112. The continued harassment and retaliation from Tostado, Lind, and Fischer was unreasonable, and any person in Cunningham's shoes would similarly be forced to resign.

113. This was a constructive termination of Cunningham's employment, and therefore an adverse employment action against her.

9

114. Upon information and belief, Cunningham was replaced by someone outside of her protected class.

115. Cunningham was discriminated against due to her race, sex/gender, and disability.

116. For example, Tostado treated her differently from her similarly situated male coworkers and Pritchert called her a glorified maid.

117. In addition, Defendant pressured Cunningham to return to work before she had recovered from her car accidents, and harassed her whenever she tried to use protected leave.

118. Cunningham was retaliated against for making complaints of discrimination in the workplace.

119. Subsequent to submitting protected complaints, Cunningham began receiving disparate treatment and enduring harassment from Lind, Tostado, and Fischer.

120. Cunningham was actually forced to resign due to her race, sex/gender, and/or disability, and/or in retaliation for making complaints of discrimination in the workplace and her use of FMLA leave.

121. Whenever Cunningham tried to use protected FMLA leave, Tostado would harass her.

122. Tostado's harassment of Cunningham based on her use of protected FMLA leave contributed to the hostile work environment that left Cunningham feeling forced to resign, as any reasonable person in Cunningham's shoes would feel forced to do.

123. There was a causal connection between Cunningham's protected classes (race, sex/gender, and disability) and complaints and Defendant's adverse actions taken against Cunningham.

124. The above facts demonstrate that Defendant engaged in a pattern and practice of race, sex/gender, and disability discrimination.

125. The above facts demonstrate that Defendant engaged in a pattern and practice of unlawful retaliation.

126. There was a causal connection between Cunningham's race, sex/gender, disability, and use of FMLA leave and Defendant's constructive termination of Cunningham's employment.

127. As a direct and proximate result of Defendant's conduct, Cunningham suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT I: RACIAL DISCRIMINATION IN VIOLATION OF R.C. §4112, *et seq.*

128. Cunningham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

129. Cunningham is African American, and thus is in a protected class for her race.

130. R.C. § 4112 *et seq.* provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

131. Defendant treated Cunningham differently than other similarly situated employees based upon her race.

132. During her employment with Defendant, Cunningham was subjected to offensive and harassing conduct.

133. Defendant knew or should have known of the offensive, harassing conduct against Cunningham.

134. Defendant condoned, tolerated, and ratified this offensive, harassing conduct.

135. This offensive, harassing conduct was severe and/or pervasive.

136. This offensive, harassing conduct was offensive to Cunningham.

137. This offensive, harassing conduct would also be offensive to any reasonable person.

138. This offensive, harassing conduct interfered with Cunningham's ability to perform her job duties.

139. This offensive, harassing conduct was based on Cunningham's race.

140. This offensive, harassing conduct was so severe and pervasive that it materially altered the conditions of Cunningham's employment.

141. Any reasonable person in Cunningham's place would also have no choice but to resign due to the conduct.

142. Cunningham, with no other reasonable choice, was then forced to resign her employment.

143. Cunningham's resignation was a constructive termination, an adverse employment action.

144. Defendant constructively terminated Cunningham's employment.

145. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Cunningham differently from other similarly situated employees outside her protected class.

146. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying its employment policies in a disparate manner based on Cunningham's race.

147. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying its disciplinary policies in a disparate manner based on Cunningham's race.

148. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by constructively terminating Cunningham's employment based on her race.

149. As a direct and proximate result of Defendant's conduct, Cunningham suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII

150. Cunningham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

151. Cunningham is African American, and thus is in a protected class for her race.

152. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

153. Defendant treated Cunningham differently than other similarly situated employees based upon her race.

154. During her employment with Defendant, Cunningham was subjected to offensive and harassing conduct.

155. Defendant knew or should have known of the offensive, harassing conduct against Cunningham.

156. Defendant condoned, tolerated, and ratified this offensive, harassing conduct.

157. This offensive, harassing conduct was severe and/or pervasive.

158. This offensive, harassing conduct was offensive to Cunningham.

159. This offensive, harassing conduct would also be offensive to any reasonable person.

160. This offensive, harassing conduct interfered with Cunningham's ability to perform her job duties.

161. This offensive, harassing conduct was based on Cunningham's race.

162. This offensive, harassing conduct was so severe and pervasive that it materially altered the conditions of Cunningham's employment.

163. Any reasonable person in Cunningham's place would also have no choice but to resign due to the conduct.

164. Cunningham, with no other reasonable choice, was then forced to resign her employment.

165. Cunningham's resignation was a constructive termination, an adverse employment action.

166. Defendant constructively terminated Cunningham's employment.

167.Defendant violated Title VII by treating Cunningham differently from other similarly situated employees outside her protected class.

168.Defendant violated Title VII by applying its employment policies in a disparate manner based on Cunningham's race.

169.Defendant violated Title VII by applying its disciplinary policies in a disparate manner based on Cunningham's race.

170.Defendant violated Title VII by constructively terminating Cunningham's employment.

171.As a direct and proximate result of Defendant's conduct, Cunningham suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT III: GENDER/SEX DISCRIMINATION IN VIOLATION OF R.C. 4112 et seq.

172. Cunningham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

173. Cunningham is a member of a statutorily protected class based on her gender/sex under R.C. § 4112 et seq.

174. Defendant treated Cunningham differently than other similarly situated employees based on her gender/sex.

175. Defendant discriminated against Cunningham on the basis of her gender/sex throughout her employment with the company.

176. During her employment with Defendant, Cunningham was subjected to offensive and harassing conduct.

177. Defendant knew or should have known of the offensive, harassing conduct against Cunningham.

14

178. Defendant condoned, tolerated, and ratified this offensive, harassing conduct.

179. This offensive, harassing conduct was severe and/or pervasive.

180. This offensive, harassing conduct was offensive to Cunningham.

181. This offensive, harassing conduct would also be offensive to any reasonable person.

182. This offensive, harassing conduct interfered with Cunningham's ability to perform her job duties.

183. This offensive, harassing conduct was based on Cunningham's sex/gender.

184. This offensive, harassing conduct was so severe and pervasive that it materially altered the conditions of Cunningham's employment.

185. Any reasonable person in Cunningham's place would also have no choice but to resign due to the conduct.

186. Cunningham, with no other reasonable choice, was then forced to resign her employment.

187. Cunningham's resignation was a constructive termination, an adverse employment action.

188. Defendant constructively terminated Cunningham's employment.

189. Defendant's discrimination against Cunningham based on her gender/sex violates R.C. § 4112 et seq.

190. As a direct and proximate result of Defendant's conduct, Cunningham suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **COUNT IV: GENDER/SEX DISCRIMINATION IN VIOLATION OF TITLE VII**

191. Cunningham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

15

192. Cunningham is a member of a statutorily protected class based on her gender/sex under Title VII.

193. Defendant treated Cunningham differently than other similarly situated employees based on her gender/sex.

194. Defendant discriminated against Cunningham on the basis of her gender/sex throughout her employment with the company.

195. Defendant treated Cunningham differently than other similarly-situated employees based on her sex/gender.

196. During her employment with Defendant, Cunningham was subjected to offensive and harassing conduct.

197. Defendant knew or should have known of the offensive, harassing conduct against Cunningham.

198. Defendant condoned, tolerated, and ratified this offensive, harassing conduct.

199. This offensive, harassing conduct was severe and/or pervasive.

200. This offensive, harassing conduct was offensive to Cunningham.

201. This offensive, harassing conduct would also be offensive to any reasonable person.

202. This offensive, harassing conduct interfered with Cunningham's ability to perform her job duties.

203. This offensive, harassing conduct was based on Cunningham's sex/gender.

204. This offensive, harassing conduct was so severe and pervasive that it materially altered the conditions of Cunningham's employment.

205. Any reasonable person in Cunningham's place would also have no choice but to resign due to the conduct.

16

206. Cunningham, with no other reasonable choice, was then forced to resign her employment.

207. Cunningham's resignation was a constructive termination, an adverse employment action.

208. Defendant constructively terminated Cunningham's employment.

209. Defendant's discrimination against Cunningham based on her gender/sex violates Title VII.

210. As a direct and proximate result of Defendant's conduct, Cunningham suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT V: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112 et seq.

211. Cunningham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

212. Cunningham is disabled.

213. In the alternative, Defendant perceived Cunningham as being disabled.

214. Cunningham's condition constituted a physical impairment.

215. Cunningham's condition substantially impaired one or more of her major life activities including working.

216. Defendant perceived Cunningham's condition to substantially impair one or more of her major life activities including working.

217. Defendant treated Cunningham differently than other similarly-situated employees based on her disabling condition.

218. Defendant treated Cunningham differently than other similarly-situated employees based on her perceived disabling condition.

219. During her employment with Defendant, Cunningham was subjected to offensive and harassing conduct.

E-FILED 12/29/2022 10:39 AM / CONFIRMATION 1267585 / A 2204735 / COMMON PLEAS DIVISION / IFIJ

220. Defendant knew or should have known of the offensive, harassing conduct against Cunningham.

221. Defendant condoned, tolerated, and ratified this offensive, harassing conduct.

222. This offensive, harassing conduct was severe and/or pervasive.

223. This offensive, harassing conduct was offensive to Cunningham.

224. This offensive, harassing conduct would also be offensive to any reasonable person.

225. This offensive, harassing conduct interfered with Cunningham's ability to perform her job duties.

226. This offensive, harassing conduct was based on Cunningham's and her close associate's disabilities.

227. This offensive, harassing conduct was so severe and pervasive that it materially altered the conditions of Cunningham's employment.

228. Any reasonable person in Cunningham's place would also have no choice but to resign due to the conduct.

229. Cunningham, with no other reasonable choice, was then forced to resign her employment.

230. Cunningham's resignation was a constructive termination, an adverse employment action.

231. Defendant constructively terminated Cunningham's employment.

232. Defendant's discrimination against Cunningham based on her disability violates R.C. § 4112 et seq.

233. Defendant violated R.C. § 4112.02 by discriminating against Cunningham based on her disabling condition.

234. Defendant violated R.C. § 4112.02 by discriminating against Cunningham based on her perceived disabling condition.

18

235. As a direct and proximate result of Defendant's conduct, Cunningham suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VI: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

236. Cunningham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

237. Cunningham is disabled.

238. In the alternative, Defendant perceived Cunningham as being disabled.

239. Cunningham's condition constituted a physical impairment.

240. Cunningham's condition substantially impaired one or more of her major life activities including working.

241. Defendant perceived Cunningham's condition to substantially impair one or more of her major life activities including working.

242. Defendant treated Cunningham differently than other similarly-situated employees based on her disabling condition.

243. Defendant treated Cunningham differently than other similarly-situated employees based on her perceived disabling condition.

244. During her employment with Defendant, Cunningham was subjected to offensive and harassing conduct.

245. Defendant knew or should have known of the offensive, harassing conduct against Cunningham.

246. Defendant condoned, tolerated, and ratified this offensive, harassing conduct.

247. This offensive, harassing conduct was severe and/or pervasive.

19

248. This offensive, harassing conduct was offensive to Cunningham.

249. This offensive, harassing conduct would also be offensive to any reasonable person.

250. This offensive, harassing conduct interfered with Cunningham's ability to perform her job duties.

251. This offensive, harassing conduct was based on Cunningham's and her close associate's disabilities.

252. This offensive, harassing conduct was so severe and pervasive that it materially altered the conditions of Cunningham's employment.

253. Any reasonable person in Cunningham's place would also have no choice but to resign due to the conduct.

254. Cunningham, with no other reasonable choice, was then forced to resign her employment.

255. Cunningham's resignation was a constructive termination, an adverse employment action.

256. Defendant constructively terminated Cunningham's employment.

257. Defendant violated the ADA by discriminating against Cunningham based on her disabling condition.

258. Defendant violated the ADA by discriminating against Cunningham based on her perceived disabling condition.

259. As a direct and proximate result of Defendant's conduct, Cunningham suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT VII: HOSTILE WORK ENVIRONMENT ON THE BASIS OF RACE, GENDER/SEX, AND DISABILITY DISCRIMINATION

260. Cunningham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

E-FILED 12/29/2022 10:39 AM / CONFIRMATION 1267585 / A 2204735 / COMMON PLEAS DIVISION / IFIJ

261. During her employment with Defendant, Cunningham was subjected to offensive and harassing conduct by Defendant based on her race, gender/sex, and disability.

262. For example, Tostado treated Cunningham differently from her similarly situated male coworkers and Pritchert called her a glorified maid.

263. In addition, Defendant pressured Cunningham to return to work before she had recovered from her car accidents, and harassed her whenever she tried to use protected leave.

264. Moreover, subsequent to making protected complaints regarding discrimination, Cunningham began receiving disparate treatment and enduring harassment from Lind, Tostado, and Fischer.

265. Defendant knew or should have known of the harassing conduct against Cunningham by Defendant.

266. Defendant condoned, tolerated and ratified this harassing conduct.

267. This harassing conduct was severe and/or pervasive.

268. This harassing conduct was offensive to Cunningham.

269. This harassing conduct interfered with Cunningham's ability to perform her job duties.

270. Defendant's offensive and harassing conduct created a hostile and/or abusive work environment for Cunningham.

271. Defendant's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Cunningham.

272. Any reasonable person in Cunningham's place would also have no choice but to resign due to the conduct.

273. Cunningham, with no other reasonable choice, was then forced to resign her employment.

274. Cunningham's resignation was a constructive termination, an adverse employment action.

275. Defendant constructively terminated Cunningham's employment.

E-FILED 12/29/2022 10:39 AM  /  CONFIRMATION 1267585  /  A 2204735  /  COMMON PLEAS DIVISION  /  IFIJ

276. As a direct and proximate result of Defendant's conduct, Cunningham suffered and will continue to suffer damages.

## COUNT VIII: RETALIATORY DISCRIMINATION

277. Cunningham restates each and every prior paragraph of this complaint, as if it were fully restated herein.

278. As a result of the Defendant's discriminatory conduct described above, Cunningham complained about the discrimination she was experiencing.

279. Subsequent to Cunningham's reporting of discrimination against her to her employer, Cunningham began receiving disparate treatment and enduring harassment.

280. Cunningham, with no other reasonable choice, was then forced to resign her employment.

281. Cunningham's resignation was a constructive termination, an adverse employment action.

282. Defendant constructively terminated Cunningham's employment.

283. Any reasonable person in Cunningham's place would also have no choice but to resign due to the conduct.

284. Subsequent to Cunningham's reporting of discrimination against her to her employer, Defendant took adverse actions against Cunningham including, but not limited to, constructively terminating her employment.

285. Defendant's actions were retaliatory in nature based on Cunningham's opposition to the unlawful discriminatory conduct.

286. Pursuant to R.C. §4112.02(I), Title VII, and the ADA, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

287.As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Cunningham, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT IX: RETALIATION IN VIOLATION OF THE FMLA

288.Cunningham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

289.During her employment, Cunningham qualified for and attempted to take FMLA leave.

290.Defendant knew Cunningham took FMLA leave.

291.After Cunningham utilized her qualified FMLA leave, Defendant retaliated against her.

292.Any reasonable person in Cunningham's place would also have no choice but to resign due to the conduct.

293.Cunningham, with no other reasonable choice, was then forced to resign her employment.

294.Cunningham's resignation was a constructive termination, an adverse employment action.

295.Defendant constructively terminated Cunningham's employment.

296.There was a causal link between Cunningham's medical leave under the FMLA and Defendant's termination of Cunningham's employment.

297.Defendant's actions show that it willfully retaliated against Cunningham in violation of U.S.C. § 2615(a).

298.As a direct and proximate result of Defendant's wrongful conduct, Cunningham is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

### DEMAND FOR RELIEF

WHEREFORE, Cunningham demands from Defendant the following:

a) Issue a permanent injunction:

    i.    Requiring Defendant to abolish discrimination, harassment, and retaliation;

    ii.    Requiring allocation of significant funding and trained staff to implement all changes within two years;

    iii.    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    iv.    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    v.    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge Cunningham's personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Cunningham for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Cunningham's claims as allowable under law;

24

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

\_\_/s/Matthew G. Bruce_____
Evan R. McFarland (0096953)
Matthew G. Bruce (0083769)
     Trial Attorney
**SPITZ, THE EMPLOYEE'S LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:    (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com

*Attorneys for Plaintiff Tunisha Cunningham*

25

## **JURY DEMAND**

Plaintiff Tunisha Cunningham demands a trial by jury by the maximum number of jurors permitted.

_\_\_/s/Matthew G. Bruce_____
Evan R. McFarland (0096953)
Matthew G. Bruce (0083769)

26

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Cincinnati Area Office**
550 Main Street, Suite 10-191
Cincinnati, OH 45202
(513) 914-6009
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 10/05/2022

**To:** Tunisha Cunningham
282 Jupiter Dr
Cincinnati, OH 45238
Charge No: 473-2022-00866

EEOC Representative and email:     Matthew Meisman
Investigator
matthew.meisman@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 473-2022-00866.

On behalf of the Commission,

Digitally Signed By:Michelle Eisele
10/05/2022

Michelle Eisele
District Director

**Cc:**
Andrea Preston
PO Box 2910
Tacoma, WA 98401

Evan McFarland
The Spitz Law Firm
11260 Chester Rd Suite 825
Cincinnati, OH 45246


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

#### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

#### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

#### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 473-2022-00866 to the District Director at Michelle Eisele, 1010 West Ohio St Suite 1900

Indianapolis, IN 46204.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

Enclosure with EEOC Notice of Closure and Rights (01/22)

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at* http://www.eeoc.gov/laws/types/disability_regulations.cfm.